UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

United States of America,

        Plaintiff,

v.

D-7 Marcos Monarrez,

        Defendant.

Crim. No. 21-20747

Hon. Terrence G. Berg
U.S. District Judge

## Government's Response Opposing Revocation of Detention Order

Defendant Monarrez was indicted for a drug conspiracy involving 400 grams or more of Fentanyl. He was arrested in Arizona; a detention hearing was held after which Monarrez was ordered detained. See ECF No. 117-2, PageID. 323 - 362, Arizona Hearing (also attached at defendant's motion). Monarrez seeks to have this Court revoke the order of detention. Because Monarrez is a danger to the community and risk of flight/non-appearance, this Court should uphold the Magistrate Judge's order of detention and deny Monarrez's motion for bond.

1

## FACTS

### Arizona Fentanyl To Michigan: Detroit Metro Airport

During the conspiracy, large amounts of fentanyl were sent from Arizona to Michigan for further distribution. For example, in August 2021 co-defendant Todd, who was out in Arizona at the time, sent luggage to Detroit with hundreds of blue fentanyl pills via commercial airline. The fentanyl was seized at Detroit Metro Airport.

### Monarrez Traffic Stop: Kilogram of Fentanyl

Monarrez was involved in the fentanyl distribution conspiracy. On September 27, 2021, Monarrez and two other co-defendants flew together from Arizona to Detroit, then went to Todd's Detroit stash house. Soon after, Monarrez and the other two co-defendants left the stash house and were driven by an unsuspecting Uber driver towards Fort Wayne, Indiana. They were speeding. Police stopped the car.

Each of the three passengers had a piece of luggage, namely a backpack. Monarrez had thousands of dollars in cash in his backpack. Lead defendant Garcia's backpack contained over a Kilogram of those same style of blue Fentanyl pills that were seized at the Airport. Defendant Rodriguez also had thousands of dollars in currency. As the Arizona Magistrate Judge found, the facts surrounding

2

the traffic stop show that the three defendants and their backpacks were connected. *Id.* at PageID. 336-38. Those three defendants' cellphones were seized and searched.

### Monarrez's Phone: Guns, Fentanyl, Cash

Monarrez has photos of Fentanyl, Guns, and Cash on his cellphone. See Exhibits 1 through 7, attached. These exhibits are some photos taken during the conspiracy; from March 20, 2020 through August 19, 2021. They show gun possession in autos as well as large amounts of the blue fentanyl pills, plus a sizeable sum of cash.

The Exhibits demonstrate that Monarrez has been active for months in the conspiracy. Thus, the September 2021 traffic stop was not an isolated incident. On the contrary, the Exhibits establish that Monarrez has been an active participant in the conspiracy from at least early 2020. The Exhibits show that Monarrez is dangerous to the community. His detention should continue.

### Monarrez's Arrest: Guns, Fentanyl and Cash Seized

Monarrez was arrested in February 2022 after leaving an apartment in Arizona. He had thousands of dollars in cash on his person. At that time, he told law enforcement that there were firearms in a kitchen drawer in the apartment.

3

The guns were found where Monarrez had stated. Also, in a car in the garage was a distribution quantity of fentanyl pills; the same blue fentanyl pills previously seized in this case.

<u>LAW FAVORS DETENTION</u>

<u>Presumption of Detention</u>

The Indictment charges Monarrez with drug conspiracy involving 400 grams or more of fentanyl. But Monarrez was involved in far more than 1,000 grams of fentanyl, far eclipsing the statutory threshold of 400 grams of fentanyl. If convicted, he faces a mandatory minimum ten (10) years' incarceration and a maximum of lifetime incarceration under the Controlled Substances Act. <u>See</u> 21 U.S.C. 841(a), 841(b) and 846. His gun possession renders him ineligible for the "safety valve."

Under these circumstances, 18 U.S.C. 3142 provides that a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the appearance of the defendant in court and the safety of the community.

Because of the seriousness of his charged fentanyl offense, Monarrez faces a presumption of detention. 18 U.S.C. § 3142(e)(3)(A); *U.S. v. Stone*, 608 F.3d at 945 (6th Cir. 2010). That presumption imposes a burden of production on a defendant to offer at least some evidence that he is not a flight risk or danger to the community. *Stone*, 608 F.3d at 945. Even if a defendant satisfies that burden, the

presumption of detention does not vanish. *Id.* The district court must still afford some weight to the presumption because it reflects Congress's judgment that "particular classes of offenders should ordinarily be detained prior to trial." *Id.*; *see also United States v. Lattner*, 23 F. App'x 363, 364 (6th Cir. 2001) (quoting *U.S. v. Martir*, 782 F.2d at 1144 (2d Cir. 1986)).

## Additional Analysis Favors Detention

The evidence concerning danger to the community is strong. Monarrez and two co-conspirators were caught in the September 2021 traffic stop with a kilogram of Fentanyl. His cell phone contains numerous photos of fentanyl, guns and cash. The controlled substances in this case involve mammoth quantities of fentanyl, a particularly dangerous drug vis-à-vis, say, marijuana.

Defendant's role was not limited to a single local traffic stop. He flew into Detroit from Arizona with two co-conspirators. He went with them to a stash house in Detroit, then left with those same co-conspirators; the lead defendant who was with him had a backpack of fentanyl. They were heading out of Michigan to distribute the drugs. Each had thousands of dollars in cash.

Moreover, Monarrez's cellphone contains photos that suggest a more extensive involvement in fentanyl distribution and gun possession. See Exhibits 1 – 7. Plus, the circumstances of his arrest in Arizona show continued Fentanyl and

gun knowledge and activities. At the time of his February 2022 arrest, Monarrez knew there was an indictment and arrest warrant for him. ECF No. 117-2, PageID. 329 – 31 and at 350. Monarrez was not on his way to self-surrender. *Id.* at 350. At that time, Monarrez had thousand of dollars in cash with him. The Arizona District Court was rightfully "skeptical" that the cash was for defendant's self-surrender. *Id.*

Monarrez is also a risk of flight/non-appearance. He has nothing other than criminal ties to this District. Monarrez has had sporadic employment. *Id.* at 327. Defendant's residence is also sporadic in nature; he claims to live with his mother but she contradicted that. *Id.* at 326, 341 – 344. Also, at first his mother declined to be a third-party custodian. *Id.* at 327.

Monarrez is facing at least 10 years' mandatory minimum incarceration in prison. *See* 21 U.S.C. § 841(b)(1)(A). Avoiding that relatively "lengthier sentence if convicted" provides a strong incentive for Monarrez to flee. *United States v. Khraizat*, No. 00-2128, 2000 WL 1769637, at *2 (6th Cir. Nov. 17, 2000); *see also Namer*, 2000 WL 1872012, at *2 (finding that "the serious nature of the charges" and "the lengthy potential sentence faced by the defendant" both "weigh in support of detention").

Monarrez isn't some kid with a dime bag. The September 2021 traffic stop, his cellphone photos/Exhibits, and the facts surrounding his 2022 arrest show that

Monarrez was not a one-time mere courier or "mule." Indeed, his involvement was not a minor isolated event, but rather occurred numerous times and involved sizeable quantities of Fentanyl (over one kilogram).

## CONCLUSION

The factors to be considered in 18 U.S.C. 3142 include the nature and circumstances of the offense charged. As set forth above, this is a large drug conspiracy and Monarrez is responsible for at least one kilogram of Fentanyl – a particularly dangerous drug. Another factor is the weight of the evidence on dangerousness and risk of flight. The facts favor the government on this factor. The defendant's history and characteristics are a close call; he has no criminal history and is young. But he does not have a stable residence or employment. Finally, the factor of danger to the community strongly favors the government.

The factors must be weighed in light of the presumption of detention. Monarrez has not rebutted the presumption of detention. Even if there was no presumption, the Exhibits show that Monarrez has long been involved in Fentanyl distribution and possession of multiple Firearms. And Monarrez's arrest in Arizona in possession of and knowledge of guns, cash and drugs – after he knew he was indicted -- demonstrates by clear and convincing evidence that Monarrez is dangerous. He has no ties to this District and does not have a steady job nor a

reliable residence in Arizona. And he has incentive to flee.  The Magistrate Judge properly found that Monarrez is a risk of non-appearance.  Monarrez is a danger to the community and a risk of flight. This Court should deny defendant's motion for bond.

Respectfully Submitted,

DAWN N. ISON
United States Attorney

_s/David J. Portelli_____
David J. Portelli (P40688)
Assistant United States Attorney
(313) 226-9711
Dave.portelli@usdoj.gov                    Date: 05/02/2022

## Certificate of Service

I certify that on May 2, 2022, I electronically filed the Government's Response Opposing Revocation of Detention Order with the Clerk of the Court of the Eastern District of Michigan using the ECF system which will send notification of such filing to the following:

        David R. Cripps

        s/David J. Portelli_____
        David J. Portelli (P40688)
        Assistant United States Attorney